SECURITY STATE BANK OF HARLEM, a Corporation, Plaintiff and Appellant, *v.* EDWIN KITTLESON, Defendant and Respondent.

No. 11220.
Submitted January 13, 1967. Decided March 7, 1967.
425 P.2d 72.

Harry L. Burns, Chinook, for appellant.
Oscar Hendrickson, Chinook, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment on the verdict rendered in the district court of the Twelfth Judicial District of the State of Montana, in and for the County of Blaine, the Honorable C. B. Elwell, judge presiding.

In the cause in the district court the plaintiff Bank instituted an action on a promissory note dated November 12, 1963, in the amount of $5,247.56, due December 1, 1964. Suit was upon the note and a writ of attachment was filed against defendant Kittleson's property. An answer and counterclaim was filed by defendant in which exemplary damages were prayed for.

The respondent was a 78 year old rancher at the time of the trial who has ranched most of his life in Blaine and Phillips Counties. At the time of the trial he owned 760 acres south of Dodson, Montana, 600 of which were cultivated. For the years

1963, 1964, and 1965, he leased the land to his son Gene on a crop share of one-fourth share of the grain crop. In addition the father ran his herd of cattle, bearing the Heart Five Bar brand, with his son's cattle which bore the brand Bar K Diamond.

In November 1963, the respondent borrowed from the appellant bank the sum of $5,247.56, due December 1, 1964. At the time of the borrowing respondent not only signed a note but also gave a chattel mortgage on certain cattle for security. Prior to the due date on the note, respondent made two payments on the note that the bank applied not to his note but to a debt owed by his son Gene. The total amount paid into the bank, and applied on Gene's account came to $3,261.36. Respondent further testified that on October 27, 1965, he was in a position to pay off the note if the appellant had credited to his account the two payments. The appellant bank when the note came due sued on the note and attached certain land belonging to the respondent.

The fact situation concerning the cattle owned and mortgaged by respondent to the appellant bank are these. The respondent and his wife planned a trip to California in the month of November, 1965. As a precautionary matter, in case something should happen to them while on the trip, they went to appellant bank and had one of its officers, Mr. D. A. Davidson, make out a bill of sale from respondent to his son Gene for sixty head of livestock branded with the Heart Five Bar brand. According to the respondent and his son, the reason for making out the bill of sale was discussed, however the witness Davidson had no recollections of the conversation. It should be noted that Mr. Davidson recalls making out the note and as concerns the transaction it is of import to note that the Bill of Sale contained the following printed words about the 60 head of cattle: "All Subject to Mortgage to Security State Bank, Harlem, Montana." That instrument being the security for the amount borrowed by respondent from appellant originally to buy the

60 cattle in dispute. This Bill of Sale was left at the bank and ended up in the loan file of Gene Kittleson, the son who was considerably in debt to the bank. The respondent and his wife took the trip in question and upon return did not pick up the Bill of Sale.

The appellant claims among other things that it was deceived by the son Gene's listing all these 60 cattle as belonging to Gene when he got a loan on October 26, 1964, yet the evidence showed that one of its own officers some eleven days later, on November 6, 1964, typed onto the Bill of Sale the fact the cattle were mortgaged to the appellant.

Due to the bankruptcy of respondent's son Gene, from which the appellant suffered rather severe losses, the appellant in trying to cut the losses foreclosed not only on Gene's mortgages but also those of respondent, and in the process went out to respondent's ranch and apparently took machinery and other personalty belonging to respondent and not listed on his son's mortgage. They also took the Bill of Sale out of the son's file and had it recorded at the office of the Clerk and Recorder of Phillips County. Last but not least they took the two checks respondent tried to pay on his mortgage which were jointly in respondent's and appellant's names, and sent them back to the Livestock Company that had issued them and had the checks reissued in appellant's name. They then applied the funds to Gene's indebtedness and not to that of respondent.

The court submitted three interrogatories to the jury and their answers are the basis for the judgment. They were:

1. Was the defendant Edwin Kittleson entitled to have the proceeds of the two checks, representing the sale of Heart Five Bar cattle endorsed upon his note which he had given to the plaintiff? Answer Yes or No. *Yes.*

2. Did the plaintiff bank in gathering up property belonging to the son of defendant take and carry away some of the property of the defendant Edwin Kittleson and if you answer yes,

state the value of such property which must not exceed $144.00?
*Yes $144.00.*

3. If you answer either or both of the above interrogatories in the affirmative, then was the action of plaintiff bank actuated by malicious intent toward the defendant and if so to what extent was he damaged? If you answer yes, then you must state the amount which may be any amount but must not exceed $100,000.00. *Yes $5,000.00.*

While the appellant set forth six specifications of error they can be combined and considered under three headings.

1. Is this a case where punitive damages can be awarded?

2. By the giving of Instruction 14 was the plaintiff deprived of the defense of estoppel?

3. Is the plaintiff entitled to a new trial?

Clearly the facts as alleged and proven at trial show this to be a case where punitive damages could be awarded. The provision for exemplary damages is set forth in our codes in section 17-208, R.C.M.1947, as follows:

"In any action for a breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant."

Appellant relies on an early opinion of this court, Luther v. Lee, 62 Mont. 174, 204 P. 365, and argues that under the facts of the present case the respondent did not show sufficient evidence to show that the bank was guilty of such oppression as would establish the necessary elements to establish exemplary damages.

However, in a case authored by the same justice, and writen about a year and a half later, in a fact situation not unlike that of this case, the court found that evidence in an action against a bank for the conversion of cattle claimed by the defendant to have been taken under a chattel mortgage executed by a third person was held sufficient to show malice on the part

of the defendant's agent in taking the cattle, which malice was imputable to the defendant, and therefore sufficient to warrant the award of exemplary damages. Klind v. Valley County Bank of Hinsdale, 69 Mont. 386, 222 P. 439.

In addition the court said in the Klind case, supra, that malice, as is set forth in our statute, as a basis for exemplary damages, may be proved directly or indirectly; that is to say, by direct evidence of the evil motive and intent, or by legitimate inferences to be drawn from other facts and circumstances in evidence. Where punitive damages are sought, the motives of the defendant become a most material subject of inquiry.

Considering the evidence here which showed substantial injury we cannot say that the court erred in allowing instructions on exemplary damages, nor does the amount of punitive damages appear excessive. Respondent sued for $100,000 punitive damages and the jury's award of $5,000 shows consideration by them of all the facts leading to their award.

Concerning the second issue of appellant's contention that it was deprived of its defense of estoppel by the giving of Instruction 14, we find no merit.

This instruction reads as follows:

"You are instructed the sale of Heart Five Bar cattle by Edwin Kittleson was proper, provided he used the proceeds, or attempted to use the proceeds of the sale of said cattle for the payment of the note and mortgage given as security for payment."

As previously pointed out all the proof submitted showed the Heart Five Bar Brand belonged to respondent and that the bank not only loaned the money to respondent so that he could purchase the cattle but held the mortgage on same as security. The appellant cannot now set up estoppel when the very instrument they rely on for this defense alerts them that any transfer or sale of cattle was subject to the mortgage.

Issue three, the granting of a new trial, must be answered in the negative for to do so we would have first have to have answered the first two issues in the affirmative. We find that appellant had a fair and impartial trial presided over by an experienced and able judge.

The judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, DOYLE and CASTLES, concur.